DAVID A. KRENKEL, ESQ. (DAK-4632)
Copper Gables Professional Building
1001 Deal Road
Ocean Township, New Jersey 07712
Tel. 732-493-1343 Fax 732-695-2782
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.S.T., LLC,<br><br>Plaintiff<br><br>v.<br><br>CARVIN PALLENBERG, HINDING TENNIS COURTS, LLC,  ABC INCS 1-100, XYZ CORPS. 1-100, JOHN and JANE DOES 1-100,<br><br>Defendants. | CIVIL ACTION NO. 07-795 (JAP)<br><br>AMENDED COMPLAINT<br><br>Documents filed electronically |

A.S.T., LLC (hereinafter referred to as "AST" or "Plaintiff") by way of Complaint against Defendants' Carvin Pallenberg, and Hinding Tennis Courts, LLC, (hereinafter collectively referred to as "Defendants") states and alleges as follows:

### BASIS OF THE COURT'S JURISDICTION AND VENUE

Jurisdiction is appropriate under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

Venue is proper pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the acts or omissions giving rise to the claims occurred in this district.

## PARTIES

1. Plaintiff AST is a New Jersey Limited Liability Company with its principal place of business at 5050 Industrial Road, Farmingdale, New Jersey 07727. AST is engaged in the sale of crack repair systems for tennis courts and is also engaged in the repair of tennis courts.

2. Defendant Carvin Pallenberg (hereinafter referred to as "Pallenberg") is a Connecticut resident who, upon information and belief lives at 38 Nortontown Road, Madison, Connecticut 06443.

3. Defendant Hinding Tennis Courts, LLC (hereinafter referred to as "Hinding Tennis") is a Limited Liability Company that upon information and belief has its principal place of business located at 90 Wildrose Avenue, Guilford, Connecticut 06437.

4. ABC Incs. (1-100) and XYC Corps. (1-100), John and Jane Does (1-100),  are currently unknown and unidentified fictitious individuals and/or entities that may be liable for the causes of action set forth herein.

5. Pallenberg signed a Non-Competition and Confidentiality Agreement with AST, and is a former employee of same, in the State of New Jersey, and therefore, has sufficient contacts with the State of New Jersey.

6. This is a civil action brought by AST against Defendant Pallenberg for relief associated with Pallenberg's breach of his Non-Competition and Confidentiality Agreement with AST and against Hinding Tennis associated with their tortious interference with AST's contract with Pallenberg and with their tortious interference with AST's prospective economic advantage.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.  Defendant Pallenberg was employed by AST from approximately June 11, 2002 through September 15, 2006.

8.  During his employment with AST, Pallenberg served as the sole sales person for AST.

9.  On or about June 6, 2002, as a condition of Pallenberg's employment with AST, AST and Pallenberg entered into an Non-Competition and Confidentiality Agreement (the "Agreement"). A copy of the Agreement is attached hereto as **Exhibit A**.

10. In Paragraph one (1) of the Agreement, Pallenberg agreed to hold all confidential information and trade secrets belonging to AST in confidence.  The Agreement further states that Pallenberg agreed not to disclose or enable anyone else to disclose or use confidential information

11. In Paragraph two (2) of the Agreement, Pallenberg agreed to abide by this restriction with regard to confidential information for the duration of his employment with AST and for a period of five (5) years thereafter.

12. In Paragraph two (2) of the Agreement, Pallenberg agreed that following his termination, he would not compete with AST for a period of five (5) years.

13. In the Enforceability Paragraph of the Agreement, Pallenberg acknowledged and agreed that AST would be irreparably harmed and would be entitled to injunctive relief against him in the event of any breach or threatened breach of the Agreement.

14. In September 2006, AST informed Pallenberg that his performance was poor and that if he didn't improve his performance he needed to move on. On or about September 14, 2006, Pallenberg submitted a letter to AST stating that he resigned his position with AST effective September 15, 2006.   Concerned that Pallenberg's schedule included an

3

upcoming west coast trip to train a contractor and attend a trade show, Daniel Clapp,
owner of AST, called Mr. Pallenberg and at that time he agreed to stay with the company
for two (2) more weeks. It was imperative that AST proceed with the demonstration and
trade show as expected by their customers. After Mr. Pallenberg agreed to stay with the
company, Mr. Clapp spoke with his foreman, Brian Douglas. Based on the conversation
with Mr. Douglas and his version of what Pallenberg said to him, Mr. Clapp became
concerned with continuing Mr. Pallenberg's employment. Accordingly, Mr. Clapp called
Mr. Pallenberg and informed him that his services were no longer required. After Mr.
Clapp informed Mr. Pallenberg that he was terminated, Mr. Pallenberg sent a self-serving
letter on the same date indicating that AST intended to retain his services under a
"separate agreement". AST never agreed to retain Mr. Pallenberg's services under a
separate agreement.

15. Riteway, LLC is a company engaged in selling products similar to AST and is a direct
competitor.

16. Upon information and belief, Riteway was formed in 2006 by Pallenberg and Thomas
Hinding.

17. Prior to Riteway's formation, Defendant Hinding Tennis was aware of Pallenberg's
employment contract and the restrictions therein.

18. At the time Riteway was formed, all Defendants were aware that Pallenberg was a party
to a Non-Competition and Confidentiality Agreement with AST.

19. Despite this knowledge, Riteway was formed so that Pallenberg and Hinding Tennis
could solicit business from the AST customers with whom Pallenberg had material
contacts and end users of AST's products. The Defendants conspired to divert such

business away from AST and to Riteway and/or the other Defendants' businesses, and in doing so, wrongfully utilized confidential information Pallenberg had gained through his employment with AST to their benefit. Upon further information and belief, Pallenberg formed, or was involved in the formation of Riteway, prior to September 2006, the time in which Pallenberg's employment with AST terminated.

20. Since leaving AST, Pallenberg has solicited the following AST customers, either individually or on behalf of Riteway:

      i. Hinding Sealcoating, located in Connecticut;
     ii. Copeland Coating, located in New York;
   iii. New England Sealcoating, located on New York;
   iv. US Tennis Court Construction, located in Illinois and Arizona;
    v. M&M Tennis Court Company, located in Connecticut;
   vi. Ferrandell Tennis Courts, located in California;
  vii. Advantage Tennis, located in Vermont;
 viii. Maine Tennis and Tract, located in Maine; and
   ix. Riggs Recreation, located in Kansas.

21. AST's industry is an extremely small niche market. The customer lists and relationships with the contractors are extremely valuable to a company such as AST. It took years for AST to compile their comprehensive customer list. Defendants are in a position to destroy AST if they are permitted to continue competing in violation of the agreement.

### FIRST COUNT
### Breach of Contract

22. Plaintiff repeats and realleges paragraphs as if fully set forth herein, and further alleges:

23. Based upon the actions described herein, Pallenberg breached the Agreement with AST, including, but not limited to, Paragraphs 1 and 2 of the Agreement.

24. As a direct consequence of Pallenberg's breach of the Agreement, Plaintiff has suffered and will continue to suffer irreparable damages for which Plaintiff possesses no adequate remedy at law.

## SECOND COUNT
### Breach of Duty of Good Faith and Fair Dealing

25. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, and further alleges:

26. There is a duty of good faith and fair dealing implied in all agreements in New Jersey, and as such, there was a duty of good faith and fair dealing implied in the Agreement.

27. By Pallenberg's wrongful actions described herein, Pallenberg breached his implied duty of good faith and fair dealing.

28. As a result of Pallenberg's breach, Plaintiff has suffered and will continue to suffer irreparable damages for which Plaintiff possesses no adequate remedy at law.

## THIRD COUNT
### Breach of Fiduciary Duty

29. Plaintiff repeats and realleges the preceding paragraphs 1 through 30 as if fully set forth herein, and further alleges:

30. While serving as AST's Salesman, Pallenberg was a fiduciary of and maintained a confidential relationship with AST.

31. Pallenberg owed AST certain fiduciary duties while still employed by AST, including, but not limited to, the duty not to solicit AST customers on behalf of a competing company and the duty not to misuse confidential information and trade secrets belonging to AST.

32. Upon information and belief, Pallenberg breached his fiduciary duties while still employed by AST by engaging in certain activities, including, but not limited to, relaying confidential information about AST to Defendants, soliciting AST customers on behalf of Defendants, and copying and retaining proprietary confidential information and/or trade secrets with the intent to give it to or use it on behalf of Riteway and other Defendants.

33. As a direct consequence of Pallenberg's breach of his fiduciary duty, Plaintiff has suffered and will continue to suffer irreparable damages for which Plaintiff possesses no adequate remedy at law.

## FOURTH COUNT
## Breach of Duty of Loyalty

34. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, and further alleges:

35. While employed by AST, Pallenberg owed a duty of loyalty to the company.

36. Upon information and belief, Pallenberg breached his duty of loyalty to AST by engaging in certain activities, including, but not limited to, relaying confidential information about AST to Defendants, soliciting AST customers on behalf of Defendants, and copying and retaining proprietary confidential information and/or trade secrets with the intent to give it to or use it on behalf of Riteway and other Defendants.

37. As a direct consequence of Pallenberg's breach of his duty of loyalty, Plaintiff has suffered and will continue to suffer irreparable damages for which Plaintiff possesses no adequate remedy at law.

## COUNT FIVE
### Injunctive Relief

38. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, and further alleges:

39. The balance of equities favors the issuance of injunctive relief, and an injunction would not be adverse to the public interest.

40. Plaintiff is entitled to the issuance of an injunction.

## COUNT SIX
### Tortious Interference With Contract as against all Defendants

41. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, and further alleges:

42. AST had a valid and enforceable agreement with Pallenberg, whereby Pallenberg was restricted from using AST's confidential information during and upon termination of his employment and was restricted from competing with AST upon termination of his employment.

43. Defendants knew about the contract between AST and Pallenberg.

44. Despite such knowledge, Defendants specifically and knowingly induced Pallenberg into breaching his contract with AST by, among others, inducing Pallenberg into soliciting business from those AST customers that Pallenberg was prohibited from calling on pursuant to his valid and binding contract with AST and utilizing and divulging confidential information to gain unfair advantages over AST in the sale of its product to customers and end users.

8

45. As a result of Defendants' intentional and malicious interference, Pallenberg has breached its obligations to AST pursuant to the parties' contract, and his obligation of good faith and fair dealing.

46. AST has suffered and will continue to suffer irreparable harm and significant damages as a result of Defendants' conduct.

**COUNT SEVEN**

**Tortious Interference With Prospective Economic Advantage as against all Defendants**

47. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, and further alleges:

48. AST had a prospective economic advantage by way of its ongoing relationships with its customers and the investment in cultivating and maintaining said relationships.

49. Defendants have intentionally and maliciously interfered with AST's prospective economic advantage through unlawful conduct.

50. As a result of Defendants' interference, AST has suffered, and continues to suffer, irreparable harm and significant damages.

**WHEREFORE,** Plaintiff A.S.T., LLC demands judgment against Defendants:

a. enjoining Carvin Pallenberg from having any contact with customers of AST or competing with AST, directly, or indirectly in the ownership, management of or employment with any enterprise engaged in a business which competes with AST for five (5) years from the date of judgment; and

a. enjoining Defendants from having any contact with customers of AST or competing with AST in the same business of which AST is engaged for five (5) years from the date of judgment; and

b.  enjoining Defendants from utilizing AST's trade secrets and/or confidential and proprietary information for five (5) years from the date of judgment;

c.  requiring Defendants to delete and destroy any electronic or other copies of information belonging to AST, including, but not limited to, files maintained on any computer, drive, or email account;

d.  awarding AST compensatory and punitive damages;

e.  awarding AST pre judgment interest, costs and attorney fees; and

f.  granting AST such other relief as the Court deems equitable and just.

BY: _____

DAVID A. KRENKEL, ESQ.
Attorney for Plaintiff

Dated: May 20, 2008

10

# EXHIBIT

# A

## Non-Competition and Confidentiality Agreement

This agreement is entered into as of the ___11___ day of ___6___ 2002, between **Daniel C. Clapp** of A.S.T., LLC and **Carvin Pallenberg**.

Mr. Pallenberg's primary responsibility with A.S.T., LLC will be to promote and sell the *ARMOR Crack Repair System*. In this capacity, it is understood that Mr. Pallenberg may or may not technically be considered an "employee" of the company. However, regardless of whether he is a sub-contractor, an outside salesman, or other, throughout this document his position will be described as "Employee". Daniel C. Clapp and A.S.T., LLC will be referred to as "Company".

WHEREAS, out of respect for the Employee's integrity and abilities the Company is placing trust in the Employee by placing him in a position where he may have access to or may be exposed to Confidential Information; and

WHEREAS, the Company's reputation and present and future competitive position is largely dependent upon the confidentiality of such information and of the non-competition of the employee;

NOW, THEREFORE, the Company and the Employee agrees as follows:

1. **Confidential Information.** Employee acknowledges that he has learned and will learn Confidential Information, as defined herein, relating to the business conducted by the Company. Employee agrees that he will not, except in the normal and proper course of his duties, disclose or enable anyone else to disclose or use, either during the Employment Term or subsequent thereto for the applicable period of any non-compete pursuant to Paragraph 2, any such Confidential Information without prior written approval from the Company.

"Confidential Information" shall include, but not be limited to, the following types of information, both existing and contemplated, and regarding the Company: corporate information, including contractual licensing arrangements, plans, strategies, tactics, policies, resolutions, patent applications and any litigation or negotiations; marketing information, including sales or product plans, customers, prospect lists, market research data; financial information, including costs and performance data, investors and holdings; operational formulas, and background information; suppliers; technical information, designs, drawings and specifications; and personnel information. Confidential Information is limited to that information which is generally not known to the public, is not in the public domain, or available through reference to general library sources. Confidential Information does not include general skills, knowledge and experience acquired by Employee before and/or during employment with the Company.

Employee agrees that all documents of any nature pertaining to the business and assets of the Company (excluding personal possessions of Employee) in his possession at any time during his employment including without limitations, memoranda, notebooks, notes, data sheets, and records are and shall be the property of the Company, and they and all copies of them shall be surrendered to the Company upon the Company's request from time to time during such employment and with or without request upon termination of such employment.

Employee agrees that he will promptly disclose to the Company all inventions, discoveries and improvements whether patentable or not, made or conceived during the Employment Term, which are within or in any way related to the existing or contemplated scope of the business of the Company, all of which invention, discovery or improvement shall be deemed to have been made within the Employment Term if it is made or conceived within six months of the end of the Employment Term and results from, or was suggested by, the Employee's employment by the Company.

Page 1 of 2

Page 2 of 2

2. **Non Competition**: Employee agrees that during his employment by the Company he will not engage directly or indirectly in any business of the same nature or similar nature to the business of the Company or any business in which the Company is engaged in developing, nor will Employee participate directly or indirectly in the ownership or management of any enterprise engaged in such a business within the United States of America.

In the event that the Employee is terminated for Cause, Employee shall not, for a period of five (5) years engage directly or indirectly in any business of the same nature or similar nature to the business of the Company or any business which the Company shall have engaged in developing, nor will Employee participate directly or indirectly in the management or ownership of any enterprise engaged in such a business within the United States of America.

In the event that the Employee is terminated for any reason other than Cause or death or permanent disability, Employee shall not, for a period of five (5) years, engage directly or indirectly in any business of the same nor will the Employee participate directly or indirectly in the management or ownership of any enterprise engaged in such business within the United States.

3. **Severability**. In the event that, notwithstanding the foregoing, any of the provisions of Paragraph 1 or 2 or any other provisions of this Agreement shall be held to be invalid or unenforceable the remaining provisions thereof shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included therein. In the event that any provision of Paragraph 2 shall be declared by a court of competent jurisdiction to exceed the maximum time period or restriction such court deems reasonable and enforceable for the court shall become and thereafter be the maximum time period and/or restrictions, and relevant provisions of Paragraph 2 shall be severed and so reformed.

4. **Superseding Effect**: This Agreement supersedes any prior agreements or understandings, oral or written, with respect to employment and constitutes the entire agreement with respect thereto. It cannot be changed or terminated orally and may be modified only by subsequent written agreement executed by both parties hereto.

**Enforceability**: The Employee understands that the Company's competitive position is highly dependent on the Confidential Information. The Employee further understands that Non-Competitiveness of current and future employees is imperative to the Company. Any disclosure or breach of this Agreement will cause immediate, irreparable harm to the Company. Any breach or threatened breach of this Agreement, therefore may present either a court or binding arbitrator injunction and damages. In the event that the Company institutes litigation or arbitration seeking the enforcement of this Agreement, the Company shall be entitled to recover reasonable attorney fees and costs incurred in such litigation or arbitration; however, such attorney fees and costs shall not be assessed in the event that is determined that litigation or arbitration has been pursued which is frivolous or groundless or in the event that the Employee consents, prior to a preliminary hearing, to a permanent injunction incorporating all terms of this Agreement.


Date: 06 - 11 - 02
Carvin Pallenberg, "Employee"


Date: 06 - 01 - 02
Daniel C. Clapp, President A.S.T., LLC